(1) We, the jury, on the issue joined, having found the defendant guilty of capital murder in the commission of robbery of John Fenton Langley and
___ a) find beyond a reasonable doubt that after consideration of his prior history that there is a probability that he would commit criminal acts of violence that would constitute a continuing serious threat to society;
and/or
b) find beyond a reasonable doubt that his conduct in committing the offense is outrageously and wantonly vile, horrible or inhuman in that it involved
___ 1) depravity of mind;
and/or
___ 2) aggravated battery to the victim and having considered the evidence in mitigation of the offense, unanimously fix his punishment at death.
Signed _______________________, foreperson
or
(2) We, the jury, on the issue joined, having found the defendant guilty of capital murder in the commission of robbery of John Fenton Langley and
 *604 ___ a) find beyond a reasonable doubt that after consideration of his prior history that there is a probability that he would commit criminal acts of violence that would constitute a continuing serious threat to society;
and/or
b) find beyond a reasonable doubt that his conduct in committing the offense is outrageously or wantonly vile, horrible or inhuman in that it involved
___ 1) depravity of mind;
and/or
___ 2) aggravated battery to the victim and believe from all the evidence, including the evidence in mitigation, that the death penalty is not justified, fix his punishment at:
___ a) imprisonment for life;
or
___ b) imprisonment for life and a fine of ____________, an amount not to exceed $100,000.00.
Signed _______________________, foreperson
The Warden argues that this verdict form paralleled the trial court's sentencing instructions[4] and provided a "simple decisional tree" allowing the imposition of either a life sentence or a death sentence if the jury found one or both aggravating factors but leaving only the option of a life sentence with or without a fine if the jury found neither aggravating factor. According to the Warden, the verdict form followed the format of the statutory verdict form set out in Code § 19.2-264.4(D). Thus, argues the Warden, Emmett's trial counsel could not have been ineffective for failing to object to a verdict form that this Court had previously upheld when challenged in Roach v. Commonwealth, 251 Va. 324, 336, 468 S.E.2d 98, 105, cert. denied, 519 U.S. 951, 117 S.Ct. 365, 136 L.Ed.2d 256 (1996); Stewart v. Commonwealth, 245 Va. 222, 244-45, 427 S.E.2d 394, 408-09, cert. denied, 510 U.S. 848, 114 S.Ct. 143, 126 L.Ed.2d 105 (1993); and Mueller v. Commonwealth, 244 Va. 386, 412-13, 422 S.E.2d 380, 396-97 (1992), cert. denied, 507 U.S. 1043, 113 S.Ct. 1880, 123 L.Ed.2d 498 (1993).[5]
By comparing the verdict form used in Atkins with the one given to the jury in Emmett's sentencing proceeding, it is evident that both verdict forms omitted the provisions required by Code § 19.2-264.4(D)(2).[6] Contrary to the Warden's argument, *605 Emmett's verdict form cannot be read otherwise. Thus, as in Atkins, the verdict form used in Emmett's sentencing proceeding, as a whole, was incomplete.
Since we decided Atkins more than two years before the commencement of Emmett's trial and since the verdict form used in Emmett's sentencing proceeding had the same omission as the verdict form at issue in Atkins, we conclude that the representation provided to Emmett by his trial counsel "fell below an objective standard of reasonableness." Strickland, 466 U.S. at 687, 104 S.Ct. 2052. Reasonably competent counsel would have objected to a verdict form that did not comport with the holding in Atkins and the requirements of Code § 19.2-264.4(D)(2). See Green v. Warden, 264 Va. 604, 609, 571 S.E.2d 135, 138 (2002). Thus, Emmett has satisfied the "performance prong" of the two-part test set forth in Strickland.
That conclusion does not end the inquiry. To prevail on a claim of ineffective assistance of counsel, Emmett must also show that the "deficient performance prejudiced the defense." Strickland, 466 U.S. at 687, 104 S.Ct. 2052. To satisfy the "prejudice prong" of the Strickland two-part test, Emmett "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S.Ct. 2052.
Emmett, however, argues that the omission in the verdict form at issue is a "structural error" and thus not subject to the Strickland prejudice analysis.[7] As the Supreme Court of the United States has explained, a structural error is a "defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." Arizona v. Fulminante, 499 U.S. 279, 310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991); accord Neder v. United States, 527 U.S. 1, 8, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999); Johnson v. United States, 520 U.S. 461, 466-67, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997). Such errors "infect the entire trial process," thereby requiring "automatic reversal of [a] conviction." Brecht v. Abrahamson, 507 U.S. 619, 629-30, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). They "necessarily render a trial fundamentally unfair." Rose v. Clark, 478 U.S. 570, 577, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986).
"If [a] defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other errors that may have occurred are subject to harmless-error analysis." Id. at 579, 106 S.Ct. 3101; accord Neder, 527 U.S. at 8, 119 S.Ct. 1827. Thus, the Supreme Court has found an error to be "structural" and not subject to harmless-error analysis in a "very limited class of cases." Johnson, 520 U.S. at 468, 117 S.Ct. 1544; accord Neder, 527 U.S. at 8, 119 S.Ct. 1827. See, e.g., Sullivan v. Louisiana, 508 U.S. 275, 281-82, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) (constitutionally deficient reasonable-doubt instruction to jury); Vasquez v. Hillery, 474 U.S. 254, 263-64, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986) (systematic exclusion of grand jurors who were of defendant's race); Waller v. Georgia, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984) (denial of the right to a public trial); McKaskle v. Wiggins, 465 U.S. 168, 177 n. 8, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984) (infringing the right of self-representation during trial); Holloway v. Arkansas, 435 U.S. 475, 490-91, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978) (improperly requiring counsel to represent co-defendants despite timely objection stating conflict of interest); Gideon v. Wainwright, 372 U.S. 335, 342, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)
*606 (denial of the right to counsel in criminal cases); Tumey v. Ohio, 273 U.S. 510, 535, 47 S.Ct. 437, 71 L.Ed. 749 (1927) (denial of right to have an impartial trial judge).
Similarly, we have found structural error in a narrow class of cases. For example, in a petition for writ of habeas corpus asserting a claim of ineffective assistance of counsel, we held that a jury instruction stating that the jury shall find the defendant guilty if the Commonwealth failed to prove each of the elements of the offense beyond a reasonable doubt was not subject to the Strickland prejudice analysis. Green, 264 Va. at 611-12, 571 S.E.2d at 140; see also Strickland, 466 U.S. at 692, 104 S.Ct. 2052 (prejudice is presumed in certain Sixth Amendment contexts such as actual or constructive denial of assistance of counsel altogether). Because of the constitutionally erroneous jury instruction, we could not "determine whether, but for counsel's deficient performance, the result of the proceeding would have been different because there was no `result,' i.e., no verdict of guilty-beyond-a-reasonable-doubt." Green, 264 Va. at 611, 571 S.E.2d at 140.
In contrast, the Supreme Court has applied the harmless-error analysis to a broad range of constitutional errors. See, e.g., Mitchell v. Esparza, 540 U.S. 12, 16-17, 978, 124 S.Ct. 7, 157 L.Ed.2d 263 (2003) (trial court failed to instruct on all of the statutory elements of a capital murder offense); Brecht v. Abrahamson, 507 U.S. 619, 638, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (use for impeachment purposes of a defendant's post-arrest silence after receiving Miranda warnings); Clemons v. Mississippi, 494 U.S. 738, 752-54, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990) (unconstitutionally vague jury instruction regarding an aggravating factor in the sentencing phase of a capital murder case); Carella v. California, 491 U.S. 263, 266-67, 109 S.Ct. 2419, 105 L.Ed.2d 218 (1989) (jury instruction contained conclusive presumptions as to the elements of the charged crime); Satterwhite v. Texas, 486 U.S. 249, 258, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988) (admission of psychiatric testimony at the sentencing phase of a capital murder case in violation of the Sixth Amendment right to counsel); Pope v. Illinois, 481 U.S. 497, 501-04, 107 S.Ct. 1918, 95 L.Ed.2d 439 (1987) (element of the offense misstated in a jury instruction); Rose v. Clark, 478 U.S. 570, 579-80, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986) (jury instruction impermissibly shifted the burden of proof to the defendant on the issue of malice); Crane v. Kentucky, 476 U.S. 683, 691, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986) (erroneous exclusion of the defendant's testimony as to the circumstances surrounding his confession); Delaware v. Van Arsdall, 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986) (restricted the defendant's right to cross-examine a witness to show bias in violation of the Sixth Amendment Confrontation Clause); Rushen v. Spain, 464 U.S. 114, 117, 104 S.Ct. 453, 78 L.Ed.2d 267 (1983) (denial of a defendant's right to be present during a juror's communication with the trial judge); United States v. Hasting, 461 U.S. 499, 505, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983) (prosecutor's improper comment on the defendant's failure to testify at trial in violation of the Fifth Amendment privilege against self-incrimination); Hopper v. Evans, 456 U.S. 605, 613-14, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982) (statute improperly precluded jury instruction on lesser-included offense in a capital murder case); Kentucky v. Whorton, 441 U.S. 786, 789-90, 99 S.Ct. 2088, 60 L.Ed.2d 640 (1979) (trial court failed to instruct the jury on presumption of innocence); Moore v. Illinois, 434 U.S. 220, 232, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977) (admission of corporeal identification evidence in violation of the Sixth Amendment right to counsel); Brown v. United States, 411 U.S. 223, 231-32, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973) (admission of co-defendant's out-of-court statement in violation of the Sixth Amendment right to counsel); Milton v. Wainwright, 407 U.S. 371, 372, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972) (admission of defendant's confession obtained by an undercover police officer in violation of Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964)); Chambers v. Maroney, 399 U.S. 42, 52-53, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970) (admission of evidence obtained in violation of the Fourth Amendment); Coleman v. Alabama, 399 U.S. 1, 10-11, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970) (denial of the assistance of counsel at a preliminary *607 hearing in violation of the Sixth Amendment).[8]
The decision in Neder is especially instructive in explaining what constitutes a structural error. The trial error at issue there was a jury instruction that omitted an element of the charged offense. 527 U.S. at 8, 119 S.Ct. 1827. The Supreme Court found that, "[u]nlike such defects as the complete deprivation of counsel or trial before a biased judge, an instruction that omits an element of the offense does not necessarily render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." Id. at 9, 119 S.Ct. 1827. The Supreme Court further explained that its holding was consistent with its decision in Sullivan v. Louisiana. Id. at 10, 119 S.Ct. 1827. The trial court in Sullivan gave the jury a defective "reasonable doubt" instruction that violated the defendant's Fifth and Sixth Amendment rights to have the charged offense proven beyond a reasonable doubt. 508 U.S. at 277-78, 113 S.Ct. 2078. The error was not subject to harmless-error analysis because it "`vitiate[d] all the jury's findings.'" Id. at 281, 113 S.Ct. 2078. In contrast, the jury instruction error at issue in Neder did not "`vitiate all the jury's findings.'" Neder, 527 U.S. at 11, 119 S.Ct. 1827 (quoting Sullivan, 508 U.S. at 281, 113 S.Ct. 2078). The same rationale applies to the omission in the verdict form at issue in this case. It did not "vitiate all the jury's findings," Sullivan, 508 U.S. at 281, 113 S.Ct. 2078, specifically the findings that the Commonwealth had proven both aggravating factors beyond a reasonable doubt.
Thus, the omission in the verdict form at issue was not a structural error. Accordingly, the well-established prejudice analysis set forth in Strickland is applicable to Emmett's claim. Applying that analysis, we once again conclude that Emmett has failed to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S.Ct. 2052. Because the jury found that the Commonwealth had proven both aggravating factors beyond a reasonable doubt, it had no reason or occasion to consider the option of a life sentence with or without a fine mandated when the Commonwealth proves neither aggravating factor.
For these reasons, we reinstate our order dated June 4, 2004, and dismiss Emmett's petition for writ of habeas corpus.

The trial court instructed the jury that the Commonwealth had to prove at least one of the aggravating factors beyond a reasonable doubt before a sentence of death could be imposed for Emmett's conviction of capital murder. The court further instructed the jury about its sentencing options:
If you find from the evidence that the Commonwealth has proved beyond a reasonable doubt both of these circumstances, then you may fix the punishment of the defendant at death. But if you nevertheless believe from all the evidence, including evidence in mitigation, that the death penalty is not justified, then you shall fix the punishment of the defendant at:
(1) Imprisonment for life; or
(2) Imprisonment for life and a fine
...
If you find from the evidence that the Commonwealth has proved beyond a reasonable doubt either of these circumstances, then you may fix the punishment of the defendant at death. But if you believe from all the evidence, including evidence in mitigation, that the death penalty is not justified, then you shall fix the punishment of the defendant at:
(1) Imprisonment for life; or
(2) Imprisonment for life and a fine
...
If the Commonwealth has failed to prove beyond a reasonable doubt at least one of these circumstances, then you shall fix the punishment of the defendant at:
(1) Imprisonment for life; or
(2) Imprisonment for life and a fine
...

The Warden also argues that this Court ignored this binding precedent upholding use of the statutory verdict form when we decided Powell v. Commonwealth, 261 Va. 512, 552 S.E.2d 344 (2001). However, the omission in the verdict form in Powell was different than the one at issue in the present case. Thus, the Warden's arguments as to our decision in Powell are not pertinent, and we do not address them.

The sentencing option required by the version of Code § 19.2-264.4(D)(2) in effect during Atkins' trial provided:
"We, the jury, on the issue joined, having found the defendant guilty of (here set out statutory language of the offense charged) and having considered all of the evidence in aggravation and mitigation of such offense, fix his punishment at imprisonment for life.
Signed__________________foreman"
Code § 19.2-264.4(D)(2) (1995 & Supp.1997).
Atkins submitted "a proper verdict form" under Code § 19.2-264.4(D), but the trial court refused to give it to the jury. Atkins, 257 Va. at 178, 510 S.E.2d at 456. That form included the provisions of Code § 19.2-264(D)(2).
In 2003, after this Court's decision in Powell, the General Assembly amended Code § 19.2-264.4(D)(2) to add the option of a life sentence and a monetary fine. Acts 2003, chs. 1031 and 1040. Even though the amendment occurred after Emmett's trial, the verdict form used in his sentencing proceeding included this option, which was consistent with the provisions of Code § 18.2-10 (monetary limits of fine for conviction of felony).

We did not decide in Atkins whether the omission in the verdict form was subject to a harmless-error analysis.

This Court has likewise applied the harmless-error analysis to a broad range of constitutional errors. See, e.g., Dearing v. Commonwealth, 260 Va. 671, 674, 536 S.E.2d 903, 904 (2000) (admission of co-defendant's statement to police); Lilly v. Commonwealth, 258 Va. 548, 551, 523 S.E.2d 208, 209 (1999) (admission of confession by accomplice who refused to testify at trial in violation of defendant's Sixth Amendment right to confront a witness); Jenkins v. Commonwealth, 254 Va. 333, 336, 492 S.E.2d 131, 132 (1997) (admission of expert opinion concerning an ultimate fact at issue); Hewitt v. Commonwealth, 226 Va. 621, 622-23, 311 S.E.2d 112, 113-14 (1984) (denial of defendant's right to cross-examine a witness for bias in violation of defendant's right to confront his accuser); Yager v. Commonwealth, 220 Va. 608, 614, 260 S.E.2d 251, 255 (1979) (failure to instruct the jury regarding the presumption of innocence); Reid v. Commonwealth, 213 Va. 790, 795-96, 195 S.E.2d 866, 870-71 (1973) (admission of defendant's silence in violation of his right to remain silent); Cardwell v. Commonwealth, 209 Va. 412, 416, 164 S.E.2d 699, 703 (1968) (admission of defendant's statement in violation of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)).